1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

7   THERESA M. SPARING,                         )
                                                )
8                         Plaintiff,            )        Case No. 2:12-cv-01572-JCM-GWF
                                                )
9   vs.                                         )        **FINDINGS AND**
                                                )        **RECOMMENDATIONS**
10  SOCIAL SECURITY ADMINISTRATION,             )
                                                )
11                        Defendant.            )
    _____  )
12

13          This case involves judicial review of administrative action by the Commissioner of Social

14  Security denying Plaintiff Theresa M. Sparing's ("Plaintiff") claim for disability benefits under Title II

15  of the Social Security Act ("SSA").  The Court granted Plaintiff's Application to Proceed in Forma

16  Pauperis (#1) on September 10, 2012.  *See Doc. #2.*  Plaintiff's Complaint (#3) was filed September 10,

17  2012.  Defendant's Answer (#10) was filed on March 11, 2013, as was a Notice of Manual Filing of the

18  Administrative Record (the "A.R.") on March 12, 2013.  *See Notice #11.*  This matter has been

19  submitted to the undersigned United States Magistrate Judge for Findings and Recommendations on

20  Plaintiff's Motion for Remand (#18), filed on July 1, 2013; Defendant's Opposition to Plaintiff's

21  Motion to Remand (#19), filed on July 30, 2013; and Plaintiff's Reply (#25), filed on November 7,

22  2013.

23                                    **BACKGROUND**

24          Plaintiff seeks judicial review of Administrative Law Judge Thomas J. Gaye's ("ALJ") decision

25  dated July 23, 2010. (A.R. 16-30).  At issue is whether the ALJ provided sufficient support at step three

26  for his finding that Plaintiff did not meet a listing and whether the ALJ improperly rejected the opinion

27  of a treating physician when determining the Plaintiff's RFC at step four of his analysis.

28  ...

## A.      Procedural History

On July 28, 2008, Plaintiff protectively filed a Title II and Title XVI application for disability insurance benefits and supplemental security income. (A.R. 19).  In both applications, the Plaintiff alleged disability beginning August 1, 2007.  *Id*.  These claims were denied initially on January 14, 2009, and upon reconsideration on June 2, 2009.  *Id*.  Thereafter, the claimant filed a written request for hearing on June 4, 2009.  The Plaintiff appeared and testified at a hearing held on July 13, 2010, in Las Vegas, Nevada, with her non-attorney representative, Noel S. Anschutz.  *Id*.  Jack Dymond, an impartial vocational expert, also appeared at the hearing.  *Id*.  In a decision dated July 23, 2010, ALJ Thomas J. Gaye found Plaintiff was not disabled within the meaning of the SSA.  *Id*.  Plaintiff timely filed a Request for Review, which was denied by the Appeals Council on July 6, 2012. (A.R. 1).  When the Appeals Council declined to review the ALJ's decision, the decision became final.  *Id*.  Plaintiff then filed this action for judicial review pursuant to 42 U.S.C. 405(g), 1383(c)(3).  This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

## B.      Factual History

Plaintiff was 39 years old at the time of the hearing before the ALJ on July 13, 2010.  A.R. 37.  She is a high school graduate and attended 1-2 semesters of junior college.  A.R. 284.  In 2005, Plaintiff completed a nine month program in massage, but did not obtain the required license to practice due to her sickness.  A.R. 285 and 38.  Plaintiff's past work included working as a custodian, customer service, mail pick up servicer, order processor, sales receptionist, and telemarketer.  A.R. 156.  Plaintiff last worked as a kennel technician in a veterinarian's office for nine months.  A.R. 283.

Plaintiff currently resides with her parents in Boulder City, Nevada.  A.R. 282.  In her neuropsychology exam with Dr. Towle, Plaintiff indicated that she watches television an average of three hours a day and is on the computer an average of eight hours a day.  A.R. 287.  Regarding household chores, Plaintiff indicated that she changes her bed linens bi-weekly, and mops, dusts, sweeps, and vacuums once a month.  *Id*.  Plaintiff also does her own laundry once a week, cleans the bathroom, and washes the dishes by hand.  *Id*.  Plaintiff averaged doing household chores thirty minutes a day.  *Id*.  Plaintiff also indicated that her regular exercise consists of walking the dog.  A.R. 287.  She

1   estimated that on a good day she can walk for half an hour, but on average she can only walk

2   approximately 10 to 15 minutes.  A.R. 49.

3          Plaintiff alleges disability beginning August 1, 2007 based on a combination of impairments

4   including multiple sclerosis and obesity.  She is 5'4" and weighs 250 pounds.  A.R. 39.  The medical

5   records in the administrative record reveal the following:

6          On June 9, 2008, Plaintiff was examined for headaches and loss of vision by Dr. Neubaum in

7   the emergency room at Montrose Memorial Hospital.  A.R. 221 and 239.  Dr. Neubaum had an

8   MRI/Brain Scan performed on Plaintiff which indicated multiple hyperintense T2 lesions within the

9   subcortical and deep white matter.  *Id.*  Dr. Neubaum determined the findings were most consistent with

10  a demyelinating process, such as multiple sclerosis.  *Id.*  Dr. Neubaum recommended correlation with a

11  lumbar puncture.  *Id.*  In a Medical Source Statement dated September 16, 2008, Dr. Neubaum

12  indicated that Plaintiff had no impairment-related physical limitations, but qualified his finding by

13  stating that he had not seen the patient since June 2008 and that her condition may have changed.  A.R.

14  241-242.

15         On June 10, 2008, Dr. Hehmann, a board certified neurologist, examined Plaintiff and found

16  that she had mild to moderate optic nerve edema on the left optic disk.  A.R. 239.  Dr. Hehmann

17  diagnosed Plaintiff with optic neuritis for which he prescribed Solu Medrol followed by an oral

18  prednisone.  A.R. 239-240.  Dr. Hehmann stated that Plaintiff would fall into a category of possible MS

19  with optic neuritis.  A.R. 240.  Dr. Hehmann recommended a spinal tap to look for oligoclonal bands.

20  *Id.*  Dr. Hehmann indicated the need for a neurologic follow-up and referred Plaintiff to the University

21  of Nevada School of Medicine ("UMC") where she met with Dr. Ginsburg on July 16, 2008.  A.R. 231.

22         In his initial consult, Dr. Ginsburg examined Plaintiff for optic neuritis.  A.R. 231.  Dr.

23  Ginsburg's impression was that Plaintiff's left optic neuritis improved following a course of steroids.

24  A.R. 233.  Dr. Ginsburg noted that Plaintiff's cognitive function was normal, her motor strength was

25  5/5 in all muscle groups with normal tone and bulk and no presence of tremors or fasciculations.  A.R.

26  232.  Plaintiff's sensory examination was intact, her gait was normal and her cerebral finger to nose and

27  rapid alternating movements were normal.  A.R. 233.  Dr. Ginsburg indicated that Plaintiff's brain MRI

28  revealed findings suggestive of demyelinating disease and noted the finding may be compatible with

1    Plaintiff's reported transient symptoms.  A.R. 233.  Dr. Ginsburg recommended an MRI of the cervical

2    spine, a lumbar puncture, brainstem evoked potentials of the bilateral median and posttibial nerves, and

3    a neuroophthalmology evaluation.  *Id*.  Plaintiff was to return on completion of these studies.  *Id*.

4    There is no evidence, however, Plaintiff was seen in Dr. Ginsburg's office for a follow-up examination.

5    A.R. 306 at entry 3/24/09.

6         On August 13, 2008, Plaintiff entered a clinical trial for MS.  She started on a study medication

7    dimethly furnarate or a placebo on September 2, 2008.  A.R. 319.   Plaintiff states that Dr. Glyman, an

8    associate of Dr. Ginsburg's, recommended the clinical research trial to her when diagnosed with MS in

9    July 2008.  A.R. 40.  Plaintiff ceased participation in the trial when it ended in December of 2009.  A.R.

10    41.  Plaintiff testified that the clinical trials helped with her MS symptoms "a little bit."  A.R. 41.

11         On December 11, 2008, Simon J. Farrow, a neurologist, examined Plaintiff at the request of the

12    Social Security Administration.  A.R. 253.  Dr. Farrow noted that Plaintiff's general appearance was

13    unremarkable.  Her arms and legs were normal on inspection.  Her affect appeared normal and her

14    visual fields were full to confrontation.  A.R. 254.  Dr. Farrow noted that Plaintiff's motor patterns,

15    strength, dexterity, repetitive movements, tone, somatic sensation, deep tendon reflexes, plantar

16    responses, gait and station appeared unremarkable.  *Id*.  In particular, Plaintiff had no difficulty with

17    finger to thumb, finger to nose, other fine hand movements, rapid repetitive movements, rapid

18    alternating movements, walking, walking on her toes, balancing on each leg, or bending and squatting.

19    *Id*.  Dr. Farrow stated that Plaintiff's history and available medical information was strongly consistent

20    with the diagnosis of multiple sclerosis.  *Id*.  Her major reported problems at that time were easy fatigue

21    and some difficulty thinking, which Dr. Farrow stated he had no reason to disbelieve.  *Id.*

22         On February 25, 2009, Dr. Gupta conducted a nephrology consultation of Plaintiff for

23    proteinuria.  A.R. 319 and 321.  Dr. Gupta noted that Plaintiff was sitting comfortably in no obvious

24    distress.  Her extraocular movements were intact, her neck was supple, her cardiovascular S1 and S2

25    systems were normal, and there was no edema in her extremities.  A.R. 322.  Dr. Gupta states that

26    Plaintiff had a degree of proteinuria, but he did not suspect it was nephrotic range proteinuria and could

27    be monitored over time.  *Id*.  Dr. Gupta also found that Plaintiff's multiple sclerosis was currently under

28    good control.  A.R. 323.

On February 25, 2009, Dr. Glyman completed a Multiple Sclerosis Residual Functional Capacity Questionnaire on behalf of Plaintiff.  A.R. 275.  Dr. Glyman referenced the initial consult of Plaintiff with Dr. Ginsburg on July 16, 2008.  Dr. Glyman stated that Plaintiff was not a malingerer and she suffered exacerbations of multiple sclerosis on December 28, 2008 and June 01, 2008.  A.R. 275-76.  He also indicated that Plaintiff had "significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process."  A.R. 276.  Dr. Glyman found that Plaintiff had a type of fatigue known as lassitude, typical of MS patients.  *Id*.  Dr. Glyman stated that Plaintiff was incapable of tolerating even low stress jobs.  A.R. 277.

## C.    ALJ's Decision

In his decision dated July 23, 2010, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2007 through July 23, 2010.  A.R. 19.  The ALJ found that Plaintiff possessed sufficient residual functional capacity ("RFC") to perform her past relevant work.  A.R. 25.  In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f).  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 2007.  A.R. 21.  Second, he found Plaintiff had severe impairments in the form of multiple sclerosis and obesity.  *Id*.  At step three of his analysis, the ALJ concluded that Plaintiff's combination of impairments did not meet or equal one of the listed impairments in  20 C.F.R. § 404, Subpt. P, Appx. 1.  A.R. 22.  At step four of his analysis, the ALJ found Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with limiting factors including "occasional balance, stoop, kneel, crouch and crawl, and not even moderate exposure to unprotected heights or temperature extremes."  A.R. 22.  At step five, the ALJ found that the Plaintiff was capable of performing her past relevant work.  A.R. 25.  In support of this finding, the ALJ relied on the testimony of VE Jack Dymond based on a hypothetical involving a worker with Plaintiff's age, education level, past work experience, and residual functional capacity.  A.R. 51.

...

5

1    In determining Plaintiff's RFC, the ALJ found that the weight of the objective evidence did not

2    support Plaintiff's claims of disabling limitations to the degree alleged. A.R. 19. The ALJ gave a

3    considerably detailed account of Plaintiff's medical records contained in the administrative record. As

4    to the opinion evidence, the ALJ afforded significant weight to the State physicians' and consultants'

5    medical opinions because he found them to be well supported by the medical evidence. A.R. 24. The

6    ALJ, however, gave the opinion of Dr. Farrow more weight because he had the opportunity to examine

7    the Plaintiff. A.R. 24-25. The ALJ rejected the assessment of Dr. Glyman because "he only saw

8    claimant for a couple of months and his assessment [was] not supported by the objective evidence."

9    A.R. 25. In addition to the medical records, the ALJ also relied on the Plaintiff's testimony describing

10   her daily activities. A.R. 24. Specifically, the ALJ found Plaintiff described daily activities that were

11   "not limited to the extent one would expect given the complaints of disabling symptoms and

12   limitations, such as doing some chores, laundry, dishes, reading emails and visiting aunt." *Id*.

13                                        **DISCUSSION**

14       **I.     Standard of Review**

15       A federal court's review of an ALJ's decision is limited to determining only (1) whether the

16   ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal

17   standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841,

18   846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla

19   but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

20   adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting

21   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th

22   Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting

23   evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the

24   Commissioner of Social Security are supported by substantial evidence, the District Court must accept

25   them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one

26   rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871

27   (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). *See also Vasquez v.*

28   *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the

1   ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v.*

2   *Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

3       It is incumbent on the ALJ to make specific findings so that the court need not speculate as to

4   the findings. *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In

5   order to enable the court to properly determine whether the Commissioner's decision is supported by

6   substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and,

7   where appropriate, should include a statement of subordinate factual foundations on which the ultimate

8   factual conclusions are based." *Lewin*, 654 F.2d at 635.

9       In reviewing the administrative decision, the District Court has the power to enter "a judgment

10  affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

11  remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at

12  any time order additional evidence to be taken before the Commissioner of Social Security, but only

13  upon a showing that there is new evidence which is material and that there is good cause for the failure

14  to incorporate such evidence into the record in a prior proceeding." *Id.*

15  ## II.   Disability Evaluation Process

16      To qualify for disability benefits under the Social Security Act, a claimant must show that:

17          (a)         he/she suffers from a medically determinable physical or
                         mental impairment that can be expected to result in death
18                       or that has lasted or can be expected to last for a
                         continuous period of not less that twelve months; and
19
            (b)         the impairment renders the claimant incapable of
20                       performing the work that the claimant previously
                         performed and incapable of performing any other
21                       substantial gainful employment that exists in the national
                         economy.
22

23  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

24      The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182

25  (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate

26  an "inability to engage in any substantial gainful activity by reason of any medically determinable

27  physical or mental impairment which can be expected . . . to last for a continuous period of not less than

28  12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to perform his or her

1   prior work, the burden shifts to the Commissioner to show that the claimant can perform other

2   substantial gainful work that exists in the national economy.  *Batson*, 157 F.3d at 721.

3       **III.   Analysis of the Plaintiff's Alleged Disability**

4           Social Security disability claims are evaluated under a five-step sequential evaluation procedure.

5   *See* 20 C.F.R. § 404.1520(a)-(f).  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The

6   claimant carries the burden with respect to steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094,

7   1098 (9th Cir. 1999).  If a claimant is found to be disabled, or not disabled, at any point during the

8   process, then no further assessment is necessary.  20 C.F.R. § 404.1520(a).  Under the first step, the

9   Secretary determines whether a claimant is currently engaged in substantial gainful activity.  *Id.* §

10  416.920(b).  If so, the claimant is not considered disabled.  *Id.* § 404.1520(b).  Second, the Secretary

11  determines whether the claimant's impairment is severe.  *Id.* § 416.920(c).  If the impairment is not

12  severe, the claimant is not considered disabled.  *Id*. § 404.152(c).  Third, the claimant's impairment is

13  compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1.  The claimant will

14  be found disabled if the claimant's impairment meets or equals a listed impairment.  *Id.* § 404.1520(d).

15  If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past

16  relevant work.  *Id*. § 416.920(e).  If the claimant can engage in past relevant work, then no disability

17  exists.  *Id.* § 404.1520(e).  If the claimant cannot perform past relevant work, the Secretary has the

18  burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds

19  of work.  *Id.* § 404.1520(f).  If the Secretary cannot meet his or her burden, the claimant is entitled to

20  disability benefits.  *Id.* § 404.1520(a).  Plaintiff now asserts the ALJ provided insufficient support at

21  step three for his finding that Plaintiff did not meet a listing and that the ALJ improperly rejected the

22  opinion of a treating specialist when determining the Plaintiff's RFC at step four of his analysis.

23      **A.   The ALJ provided sufficient reasons to support his finding that Plaintiff's**

24          **impairments did not meet or equal a listing at step three of his analysis**

25          An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do

26  not meet or equal a listed impairment.  *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  A

27  boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so.

28  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (holding that ALJ erred by failing to consider

1    evidence of equivalence).  *Marcia,* however, simply requires an ALJ to discuss and evaluate the

2    evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the

3    heading "Findings."  *Lewis*, 236 F.3d 503 at 513.  Furthermore, a disability claimant bears the burden of

4    proving that her impairments meet or equal a listing, including that she meets or equals each element of

5    the listing.  *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("[t]o meet a listed impairment, a

6    claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or

7    her claim.  To equal a listed impairment, a claimant must establish symptoms, signs and laboratory

8    findings at least equal in severity and duration to the characteristics of a relevant listed impairment

9    [...]").  A claimant fails to meet this burden when she offers no theory, plausible or otherwise, as to how

10   her impairments combine to equal a listed impairment.  *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir.

11   2001).  Furthermore, an ALJ is not required to discuss the combined effects of a claimant's

12   impairments or compare them to any listing in any equivalency determination, unless the claimant

13   presents evidence in an effort to establish equivalence.  *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th

14   Cir. 2005).

15          Here, relying on *Marcia*, Plaintiff contends that the ALJ did not include evidence to support his

16   conclusions under the step three heading in his analysis.  Plaintiff argues that without supporting

17   analysis, the ALJ's finding is insufficient to show that the he actually considered equivalence.  *See Doc.*

18   *#18* at pg. 12, ¶ 20.  The Court, however, finds that the ALJ did properly evaluate the listing criteria,

19   though similar to *Lewis*, not specifically under the step three listing heading.

20          Plaintiff argues that the ALJ should have conducted a thoughtful analysis of Plaintiff's condition

21   in relation to Listing 11.09.  *See Doc. #18.*  To meet or equal listing 11.09, a claimant must establish the

22   impairment of multiple sclerosis with: A) disorganization of motor function as described in 11.04B; or

23   B) visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or C)

24   significant, reproducible fatigue or motor function with substantial muscle weakness on repetitive

25   activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the

26   central nervous system known to be pathologically involved by the multiple sclerosis process.  *See* 20

27   C.F.R. Pt. 404, Subpt. P, App. 1. § 11.09.

28          To meet listing 11.09(A), the disorganization of motor function must be significant and

1  persistent in two extremities, resulting in sustained disturbance of gross and dexterous movements, or

2  gait and station.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.04.  The ALJ provided reasonable

3  evidence to support his finding that Plaintiff did not meet or equal the aforementioned listing.  The ALJ

4  specifically discussed Dr. Ginsburg's examination indicating Plaintiff's motor strength was 5/5 in all

5  muscle groups with normal tone and bulk and no presence of tremors or fasciculations.  A.R. 23.

6  Furthermore, the ALJ noted Plaintiff's unremarkable neurological and physical examinations indicating

7  normal gait.  A.R. 24.  The ALJ therefore considered whether Plaintiff met or equaled listing 11.09(A).

8        With regard to listing 11.09(B), the ALJ gave thoughtful consideration in determining that

9  Plaintiff did not meet this listing.  The ALJ noted Dr. Ginsburg's examination indicating Plaintiff's

10  optic neuritis improved following a course of steroids.  A.R. 23.  The ALJ also cited medical reports

11  showing Plaintiff's vision acuity was 20/20 bilaterally.  A.R. 23.  Furthermore, the ALJ  referenced the

12  State Agency review Psychiatrist's determination that the Plaintiff did not have a medically

13  determinable mental impairment.  A.R. 24.  The Court therefore finds that the ALJ properly supported

14  his finding that Plaintiff did not meet or equal listing 11.09(B).

15        Lastly, listing 11.09(C) provides criteria for evaluating the impairment of individuals who do

16  not have muscle weakness or other significant disorganization of motor function at rest, but who do

17  develop muscle weakness on activity as a result of fatigue.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §

18  11(E).  Use of the criteria in 11.09C is dependent upon (1) documenting a diagnosis of multiple

19  sclerosis, (2) obtaining description of fatigue considered to be characteristic of multiple sclerosis, and

20  (3) obtaining evidence that the system has actually become fatigued.  *Id*.  Here, Dr. Glyman was the

21  only doctor to find that Plaintiff suffered significant, reproducible fatigue or motor function with

22  substantial muscle weakness on repetitive activity.  A.R. 276.  The ALJ, however, specifically rejected

23  the assessment of Dr. Glyman because the ALJ found that Dr. Glyman's assessment was not supported

24  by the objective evidence.  A.R. 25.  The ALJ instead considered Dr. Ginsburg's examination indicating

25  normal motor strength and no presence of tremors or fasciculations.  A.R. 232.  The ALJ considered

26  Plaintiff's unremarkable neurological and physical examinations.  A.R. 24.  The ALJ also considered

27  Plaintiff's own testimony regarding her daily activities and exercise.  A.R. 24.  Although Plaintiff was

28  able to show a diagnosis of multiple sclerosis and some descriptions of fatigue considered to be

characteristic of multiple sclerosis, the ALJ cites sufficient evidence in the record to establish that Plaintiff failed to show her system has actually become fatigued.  The Court therefore finds that the ALJ provided sufficient evidence to support his conclusion that Plaintiff did not meet or equal listing 11.09(C).

Furthermore, *Marcia* is distinguished from the present case in that the Plaintiff in *Marcia* presented evidence in an effort to establish equivalence.  *Id.*  In this case, Plaintiff had the burden of proving that her impairments met or equaled a listing and failed to offer a theory or point to evidence showing that her impairments combined to equal a listed impairment.  The Court therefore finds that the ALJ provided sufficient evidence to support his finding that Plaintiff's impairments did not meet or equal a listing at step three of his analysis.

**B.    The ALJ did not err at step four of his analysis in determining Plaintiff's RFC**

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC.  *See* 20 CFR 404.1520(e) and 416.920(e).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  If the treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it should be afforded more weight.  20 CFR 416.927(d)(2).  If the treating physician's opinion is contradicted by another physician, then the treating physician's opinion can only be rejected by the Secretary for specific and legitimate reasons, supported by substantial evidence in the record for so doing.  *Lester v. Charter*, 81 F.3d 821, 831 (9th Cir. 1996).  The Court must uphold the Commissioner's findings if substantial evidence supports them.  *See* 42 U.S.C. § 405(g).

In determining Plaintiff's RFC, the ALJ rejected Dr. Glyman's assessment due to his limited treatment relationship with Plaintiff and because his assessment was not supported by the objective evidence.  A.R. 25.  Plaintiff contends, that Dr. Glyman's opinion should have received more weight in determining her RFC and that the ALJ improperly rejected the opinion of a treating physician.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**1.    The ALJ's decision to reject Dr. Glyman's assessment due to his limited treatment relationship with Plaintiff is supported by substantial evidence in the record**

Although a treating source's opinion will often receive greater weight than opinions from non-treating sources, such weight is contingent, in part, on the length and frequency of the treatment relationship. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).  The ALJ specifically noted Dr. Glyman's limited treatment relationship with Plaintiff as a reason for rejecting his assessment. Pursuant to the Development Summary Worksheet, an entry dated March 24, 2009 indicates that the only Medical Evidence of Record ("MER") on file from the University of Nevada School of Medicine was from the initial consult conducted by Dr. Ginsburg in July 2008.  A.R. 306.  When Dr. Glyman submitted the MS form dated February 25, 2009, an updated MER was requested by Social Security, however, Dr. Glyman's office informed the Administration that the initial consult by Dr. Ginsburg was the only MER they had on file.  *Id.*  The notes in the record indicate, "Dr. Glyman filled out MS form supplied to him by clmts attorney but does not appear to have ever tx clmt and that clmt has not been seen in that office since 7/08."  *Id.* Given the lack of medical records attesting to Dr. Glyman's treatment of Plaintiff, the ALJ could reasonably find a limited treatment relationship to support rejecting his medical assessment.

To support her argument that the ALJ erroneously rejected Dr. Glyman's opinion, Plaintiff cites *Le,* which found that there is no time requirement as to length of a treating relationship.  *See Le v. Astrue,* 529 F.3d 1200 (9th Cir. 2008).  *Le* is distinguished from the present case, however, in that the Commissioner in *Le* did not qualify the treating doctor as a treating doctor due to the limited treatment relationship.  In this instance, the ALJ considered Dr. Glyman a treating physician, but rejected his assessment due to the limited treatment relationship and because his assessment was not supported by the objective evidence.

Furthermore, Plaintiff contends that the ALJ's reasoning for rejecting Dr. Glyman's assessment due to his limited treatment relationship with Plaintiff is inconsistent with his decision to give Dr. Farrow more weight because he examined Plaintiff once.  The Court, however, is not persuaded by this argument.  Opinions of non-treating physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record of a Social

12

1  Security proceeding.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  In this instance, the

2  ALJ found Dr. Farrow's opinion to be consistent with the other evidence in the record.  Therefore, the

3  ALJ's rejection of Dr. Glyman's assessment due to his limited treatment relationship with Plaintiff is

4  supported by substantial evidence in the record.

5          **2.     The ALJ's decision to reject Dr. Glyman's assessment because his assessment was
               not supported by the objective evidence is supported by substantial evidence in the
6              record**

7          Although the opinion of a treating physician is given deference, the ALJ may reject the opinion

8  of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes

9  findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in

10  the record.  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts

11  and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *See Thomas v.*

12  *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Here, the ALJ set out a detailed and thorough summary of

13  the facts noting the conflicting clinical evidence.  A.R. 22-24.  The ALJ specifically states that, "Dr.

14  Glyman felt that the claimant'[s] experience of pain, fatigue or other symptoms [was] severe enough to

15  constantly interfere with [her] attention and concentration.  [Dr. Glyman] indicated that the claimant is

16  incapable of even 'low stress' jobs." A.R. 24.  In contrast, Dr. Farrow, "determined that the claimant

17  could perform light exertion with occasional postural limitations and avoid concentrated exposure to

18  temperature extremes, and hazardous heights and machinery." A.R. 24.  Confronted with an

19  inconsistency, the ALJ made a finding on the credibility of the opinions based on a consideration of the

20  entire record as a whole.  The ALJ found that the weight of the objective evidence did not support the

21  Plaintiff's claims of disabling limitations to the degree alleged.  A.R. 24.  The ALJ based his

22  determination on Dr. Hehmann's examination of Plaintiff in June 2008 revealing her cranial nerves

23  were within normal limits with mild to moderate optic neuritis.  A.R. 24.  The ALJ considered Dr.

24  Ginsburg's neurological examination showing Plaintiff's motor strength was within normal limits and

25  finding that her optic neuritis improved.  *Id*.  The ALJ cited Plaintiff's unremarkable neurological

26  examination with Dr. Farrow and Dr. Gupta's finding that the Plaintiff's MS was under good control.

27  *Id*.  The ALJ also considered Plaintiff's own testimony describing her daily activities such as chores,

28  laundry, dishes, reading emails and visiting her aunt, which the ALJ found were not limited to the

1    extent one would expect given the complaints of disabling symptoms and limitations. A.R. 24. Thus,

2    the ALJ gave more weight to Dr. Farrow's opinion because he found that Dr. Glyman's opinion was not

3    supported by the objective evidence.

4          Plaintiff argues that the ALJ focused solely on medically objective findings to substantiate

5    Plaintiff's diagnosis in contravention of established SSA policy and Ninth Circuit jurisprudence. The

6    Court disagrees. In *Magallanes*, the Ninth Circuit upheld the Commissioner's decision to reject the

7    opinion of a treating physician based on the contradicting testimony of a nonexamining medical advisor

8    that was supported by other evidence including laboratory test results, reports from other examining

9    physicians, and testimony from the claimant that conflicted with her treating physician's opinion.

10    *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989). Similarly, in *Andrews*, the Ninth Circuit

11    upheld the rejection of an examining psychologist's assessment because the opinion not only conflicted

12    with the opinions of five nonexamining mental health professionals, but also conflicted with claimant's

13    testimony and with medical reports contained in the record. *See Andrews v. Shalala*, 53 F.3d 1035,

14    1042-43. Similar to *Magallanes* and *Andrews*, the ALJ based his rejection of Dr. Glyman's assessment

15    on several medical reports from examining physicians that contradicted Dr. Glyman's assessment of the

16    severity of Plaintiff's symptoms. A.R. 24. The ALJ also based his rejection on the lack of medical

17    records attesting to Dr. Glyman's treatment of Plaintiff, and Plaintiff's own testimony as to her daily

18    activities that did not support the severity of the symptoms alleged in Dr. Glyman's assessment. A.R.

19    24. The Court therefore finds that the ALJ properly provided specific and legitimate reasons, supported

20    by substantial evidence in the record for rejecting Dr. Glyman's medical assessment.

21    **CONCLUSION**

22          The ALJ's decision is supported by substantial evidence. The ALJ provided sufficient support

23    for his finding that Plaintiff did not meet or equal a listing and in determining at step four that Plaintiff

24    had the residual functional capacity to perform her past work. Accordingly,

25    ...

26    ...

27    ...

28    ...

1

## RECOMMENDATION

2      **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and/or Remand (#18)

3 be **denied**.

4

## NOTICE

5      Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing

6 and filed with the Clerk of the Court within fourteen (14) days.  Appeals may been waived due to the

7 failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  Failure

8 to file objections within the specified time or failure to properly address and brief the objectionable

9 issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of

10 the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United*

11 *Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

12      DATED this 5th day of May, 2014.

13

14      _____
        GEORGE FOLEY, JR.

15      United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

15